# Secretary of State

## Corporations Division

### Suite 315, West Tower

# 2 Martin Luther King Jr. Dr.
# Atlanta, Georgia 30334-1530

| | | |
|---|---|---|
| DATE FILED | : | APRIL 21, 2008 |
| DOCKET NUMBER | : | 081120009 |
| LOCATION | : | U.S. DISTRICT COURT, NORTHERN DIST |
| FEE | : | $10.00 |

**FILING PERSON:**

ANDREW R. WOLTMAN, ESQ.
MCGUIREWOODS LLP
77 W. WACKER DR. SUITE 4100
CHICAGO, IL 60601-1818

### CERTIFICATE OF FILING

I, **Karen C. Handel,** the Secretary of State of the State of Georgia, do hereby certify under the seal of my office that copies of attached documents regarding service of process have been filed on the date set forth above concerning the following:

### C & B FOSTER'S, INC. (N/K/A BMCF, INC.)
### U.S. DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS
### CA# 08C374

Said documents are filed with the Secretary Of State under the docket number referred to above and may be produced for inspection or certification.

KAREN C. HANDEL
Secretary of State

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

JETSTREAM OF HOUSTON, INC., a Delaware corporation, and

GUZZLER MANUFACTURING, INC., an Alabama corporation,

Plaintiffs,

V.

C&B FOSTER, INC., a Georgia corporation,

Defendant.

CASE NUMBER:

**08 C 374**

ASSIGNED JUDGE:

DESIGNATED
MAGISTRATE JUDGE:

**JUDGE LEFKOW
MAGISTRATE JUDGE COX**

2008 APR 21 PM 2: 17
SECRETARY OF STATE
CORPORATIONS DIVISION

TO: (Name and address of Defendant)

C&B Foster, Inc.
3535 Mike Padgett Hwy.
Augusta, GA 30906

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Andrew R. Woltman
McGuireWoods LLP
77 West Wacker Drive, Suite 4100
Chicago, IL 60601-1818

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

MICHAEL W. DOBBINS, CLERK

**Michael W. Dobbins, Clerk**

*Anya Ellis*

(By) DEPUTY CLERK

**January 17, 2008**

Date

AO 440 (Rev. 05/00) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|

*Check one box below to indicate appropriate method of service*

**G** Served personally upon the defendant. Place where served: _____

_____

**G** Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left: _____

**G** Returned unexecuted: _____

_____

_____

**G** Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____     _____
               Date                   *Signature of Server*


               _____
                   *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

**FILED**

**JANUARY 16, 2008**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

# 08 C 374

| | | |
|---|---|---|
| JETSTREAM OF HOUSTON, INC., | ) | |
| a Delaware corporation, | ) | |
| GUZZLER MANUFACTURING, INC., | ) | |
| an Alabama corporation, | ) | |
| Plaintiffs, | ) | |
| | ) | **JUDGE LEFKOW** |
| v. | ) | No. _____ **MAGISTRATE JUDGE COX** |
| | ) | |
| C & B FOSTER, INC, a Georgia corporation, | ) | |
| | ) | |
| Defendant. | ) | |

### VERIFIED COMPLAINT

Plaintiffs Jetstream of Houston, Inc., a Delaware Corporation ("Jetstream") and Guzzler Manufacturing, Inc., an Alabama corporation, ("Guzzler") by its attorneys, complains against Defendant C&B Foster, Inc. ("C&B Foster") that:

### PARTIES

1.    Plaintiff Jetstream is a Delaware corporation with its principal place of business in Oakbrook, Illinois.

2.    Plaintiff Guzzler is an Alabama corporation with its principal place of business in Oakbrook, Illinois.

3.    Plaintiffs Jetstream and Guzzler are subsidiaries of Federal Signal Corporation ("Federal Signal"). Federal Signal is a Delaware corporation with its principal place of business in Oak Brook, Illinois.

4.    Defendant C&B Foster (also doing business as C&B Foster's Inc.) is a Georgia corporation having its principal place of business in Augusta, Georgia.

## JURISDICTION & VENUE

5.       The matter in controversy exceeds, exclusive of interest and costs, the sum of $75.000.

6.       The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(a)(1), since there is complete diversity of citizenship between Plaintiffs and Defendant and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

7.       The Court has personal jurisdiction over the Defendant in that C&B Foster negotiated with Guzzler and Jetstream for the purchase of assets located in Illinois, and, in connection therewith, executed three secured installment notes from which all claims in this Complaint derive.  The secured installment notes expressly provide that each was made at Oak Brook, Illinois and that Illinois law will apply.

8.       Venue is appropriate in this judicial district pursuant to 28 U.S.C. §1391(a) because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district, and the Secured Notes provide that Illinois is the proper venue in the event a lawsuit is necessary to enforce rights and obligations there under.

## BACKGROUND FACTS

### A. The Secured Notes

9.       On or about January 6, 2000, Jetstream sold to C&B Foster a Jetstream S/N 99448 Series 3600 ("Jetstream Equipment").  As part of the sale transaction, C&B Foster executed and delivered to Jetstream a secured installment note dated January 6, 2000 ("First Jetstream Note").

2

10.    The original amount due under the First Jetstream Note was $54,809.70, plus interest, to be made over fifty monthly installments, beginning one month from the date of acceptance of the Jetstream Equipment.

11.    On or about September 14, 2000, Guzzler sold to C&B Foster a Guzzler ACE 27", VIN#1HTGLATT81H639699 ("Guzzler ACE Equipment"). As part of the sale transaction, C&B Foster executed and delivered to Guzzler a secured installment note dated September 14, 2000 ("Guzzler Note").

12.    The original amount due under the Guzzler Note was $206,068.18, plus interest, to be made over sixty monthly installments, beginning one month after the date of acceptance of the Guzzler ACE Equipment.

13.    On or about October 9, 2000, Jetstream sold to C&B Foster a Jetstream PSI 4220 (Serial No. 00496) and PSI 4240 (Serial No. 00497) Waterblaster ("Jetstream Waterblasters"). As part of the sale transaction, C&B Foster executed and delivered to Jetstream a secured installment note dated October 9, 2000 ("Second Jetstream Note").

14.    The original amount due under the Second Jetstream Note was $179,560.00, payable in sixty monthly installments, beginning one month from the date of acceptance of the Jetstream Waterblasters.

15.    The Jetstream Equipment, Guzzler ACE Equipment, and Jetstream Waterblasters are collectively known herein as the "Equipment." The First Jetstream Note, the Second Jetstream Note, and the Guzzler Note are collectively known herein as the "Secured Notes." A true and accurate copy of the Secured Notes is attached hereto and incorporated herein as Exhibit A.

3

16.     On or about January 3, 2000, C&B Foster acknowledged receipt in good condition of the Jetstream Equipment. A true and accurate copy of the acceptance certificate is attached hereto and incorporated herein as Exhibit B.

17.     On or about September 15, 2000, C&B Foster acknowledged receipt in good condition of the Guzzler ACE Equipment. A true and accurate copy of the acceptance certificate is attached hereto and incorporated herein as Exhibit C.

18.     On or about December 15, 2000, C&B Foster acknowledged receipt in good condition of the Jetstream Waterblasters. A true and accurate copy of the acceptance certificate is attached hereto and incorporated herein as Exhibit D.

B. C&B Foster's Default

19.     C&B Foster has failed to comply with the terms of the Secured Notes, thereby defaulting on the Secured Notes. Specifically, C&B Foster has failed to fully and timely make the required payments.

20.     C&B Foster acknowledged this default by surrendering the Guzzler ACE Equipment, Jetstream Equipment, and one of the two Jetstream Waterblasters (i.e. the Jetstream PSI 4240 Waterblaster, serial number 00497). Jetstream previously advised Plaintiff C&B Foster that it also surrendered the Jetstream 4240 Waterblaster, serial number 00496 ("Withheld Jetstream"). Nevertheless, Plaintiff has no record of the transaction, and upon information and belief, C&B Foster has failed to surrender the Withheld Jetstream.

21.     The Guzzler ACE Equipment, the Jetstream Equipment, and the Jetstream PSI 4240 (Serial No. 00497) Waterblaster were all sold pursuant to the terms of the Secured Notes as to which this served as collateral and the sale proceeds were applied to reduce the balance amounts owed on the respective secured notes.

4

22.    Payment in full on the Secured Notes should have been complete by December 2005 under the Secured Notes payment schedules. As of January 8, 2008, however, the collective amount due under the Secured Notes was $179,217.10 plus interest, late fees, costs, and attorneys' fees, which continue to accrue. As of January 8, 2008, the amount due in late fees under the Secured Notes was $188,033.72. As of January 8, 2008, the collective amount due under the First Jetstream Note and Second Jetstream Note was $108,932.62, plus interest, late fees, costs, and attorneys' fees, which continue to accrue. As of January 8, 2008, the collective amount due in late fees under the First Jetstream Note and Second Jetstream Note was $102,378.05. As of January 8, 2008, the amount due under the Guzzler Note was $70,284.48, plus interest, late fees, costs, and attorneys' fees, which continue to accrue. As of January 8, 2008, the amount due in late fees under the Guzzler Note was $85,655.67.

23.    In the event of default, the Secured Notes permit Plaintiffs to accelerate the balance due, without presentment, notice, or demand of any kind, and to immediately repossess the Equipment.

24.    Plaintiffs declared all amounts due under the Secured Notes immediately due and payable and demanded immediate possession of the Equipment.

25.    Despite Plaintiffs' demands, C&B Foster has failed and refused to pay the amounts due and owing under the Secured Notes or to return the Withheld Jetstream to Jetstream.

26.    Plaintiffs have performed all obligations required to render the Secured Notes and Guarantees enforceable.

\4853514.3

## COUNT I – REPLEVIN
## (JETSTREAM AGAINST C&B FOSTER)

27.     Jetstream hereby fully incorporates by reference the allegations contained in Paragraphs 1 through 26 set forth above.

28.     This claim is brought pursuant to 735 ILCS 5/19-101, *et seq.*, and 28 U.S.C. § 1652.

29.     Pursuant to the Secured Note, and due to C&B Foster's defaults, Jetstream is lawfully entitled to possession of the Withheld Jetstream.

30.     The Second Jetstream Note expressly requires C&B Foster, upon default, to assemble the Withheld Jetstream at a convenient place acceptable to Jetstream.

31.     C&B Foster has failed and refused to assemble the Withheld Jetstream or surrender it to Jetstream. C&B Foster is therefore in wrongful possession of the Withheld Jetstream and it should be required to deliver it immediately to Jetstream.

32.     The Withheld Jetstream has not been taken for any tax, assessment, or fine levied by virtue of any law of the State of Illinois, against the property of Jetstream, or against Jetstream individually, nor seized under any lawful process against the goods and chattels of Jetstream subject to such lawful process, nor held by virtue of any order of replevin against Jetstream.

33.     Jetstream has been damaged by C&B Foster's wrongful detention of the Withheld Jetstream, and will continue to suffer further damages, including but not limited to, loss of payments for the Withheld Jetstream, depreciation and deterioration of the Withheld Jetstream as a result of its continued use by C&B Foster, and the impairment of its rights in the Withheld Jetstream, if Jetstream is unable to obtain the Withheld Jetstream.

4853514.3

34. Jetstream claims the undetermined value of the Withheld Jetstream not delivered to the officer by virtue of the enforcement of an order of replevin.

WHEREFORE, Jetstream prays that:

A.　　an Order of Replevin be entered in favor of Jetstream granting Jetstream possession of the Withheld Jetstream; and

B.　　Jetstream be granted such other and further relief as shall be just and equitable.

### COUNT II – INJUNCTIVE RELIEF
### (JETSTREAM AGAINST C&B FOSTER)

35. Jetstream hereby fully incorporates by reference the allegations contained in Paragraphs 1 though 34 set forth above.

36. Any further use or concealment of the Withheld Jetstream will cause Jetstream irreparable harm from which Jetstream has no adequate remedy at law. The Withheld Jetstream is subject to depreciation and deterioration as a result of its continued use by C&B Foster. Concealing or transferring the readily-movable Withheld Jetstream will impair Jetstream's ability to enforce its rights with respect to the Withheld Jetstream, rendering its security interest in the Withheld Jetstream meaningless.

37. Jetstream is likely to succeed on the merits of its claims in this Complaint.

38. An order for injunctive relief may feasibly be enforced.

39. An order for injunctive relief will not harm the public interest.

40. C&B Foster has no right to possession or continued use of the Withheld Jetstream. Consequently, any harm that C&B Foster may suffer from the issuance of an injunction is greatly outweighed by the harm that Jetstream will suffer if injunctive relief does not issue.

41. Accordingly, issuance of injunctive relief is warranted.

\4853514.3

WHEREFORE, Jetstream prays that:

A.    this Court enter a temporary restraining order, to be made a preliminary and eventually a permanent injunction enjoining C&B Foster from using or concealing the Withheld Jetstream or from damaging, altering, selling, transferring, or assigning the Withheld Jetstream to any third party, such order or injunction to remain in effect until the Withheld Jetstream has been turned over to Jetstream; and

B.    Jetstream be granted such other and further relief as shall be just and equitable.

## COUNT III – ACTION ON FIRST JETSTREAM NOTE AND SECOND JETSTREAM NOTE (JETSTREAM AGAINST C&B FOSTER)

42.    Jetstream hereby fully incorporates by reference the allegations contained in Paragraphs 1 through 41 set forth above.

43.    C&B Foster has subsequently failed to timely make many of the monthly payments under the First Jetstream Note and the Second Jetstream Note.

44.    C&B Foster's failure to make timely payment constituted material defaults under the First Jetstream Note and Second Jetstream Note's terms.

45.    Pursuant to the First Jetstream Note and Second Jetstream Note, payments not made when due bear interest at the rate of 18% per annum or the highest rate permitted by law, whichever is less.

46.    Upon default, C&B Foster is required to pay Jetstream all costs of collection of the Equipment and enforcement of rights under the First Jetstream Note and Second Jetstream Note, including reasonable attorneys' fees.

4853514.3

47.    Jetstream has performed all obligations required to render the First Jetstream Note and Second Jetstream Note enforceable.

48.    Jetstream has been damaged by C&B Foster's default, and will continue to suffer damages, including, but not limited to, deprivation and loss of amounts due under the First Jetstream Note and Second Jetstream Note and the deprivation of its rights in the Equipment.

49.    By reason of its default, C&B Foster owes Jetstream the amount due under the First Jetstream Note and Second Jetstream Note as of January 8, 2008 of $211,310.67 plus i) interest and late fees accruing from and after January 8, 2008; and ii) costs and reasonable attorneys' fees incurred with the enforcement of the First Jetstream Note and Second Jetstream Note and recovery of the Equipment.

WHEREFORE, Jetstream prays that:

A.    after full credit for the sale proceeds of the Jetstream Equipment and Jetstream PSI 4240 serial number 0047, judgment be entered against C&B Foster and in favor of Jetstream in the amount of $211,310.67 plus i) interest and late fees accruing from and after January 8, 2008; and ii) costs and reasonable attorneys' fees incurred with the enforcement of the First Jetstream Note and Second Jetstream Note and recovery of the Withheld Jetstream; and

B.    Jetstream be granted such other and further relief as shall be just and equitable.

COUNT IV – ACTION ON GUZZLER NOTE
(GUZZLER AGAINST C&B FOSTER)

50.    Guzzler hereby fully incorporates by reference the allegations contained in Paragraphs 1 through 49 set forth above.

51.    C&B Foster has subsequently failed to timely make many of the monthly payments under the Guzzler Note.

9

52.    C&B Foster's failure to make timely payment constituted material defaults under the Guzzler Note's terms.

53.    Pursuant to the Guzzler Note, payments not made when due bear interest at the rate of 18% per annum or the highest rate permitted by law, whichever is less.

54.    Upon default, C&B Foster is required to pay Guzzler all costs of collection of the Equipment and enforcement of rights under the Guzzler Note, including reasonable attorneys' fees.

55.    Guzzler has performed all obligations required to render the Guzzler Note enforceable.

56.    Guzzler has been damaged by C&B Foster's default, and will continue to suffer damages, including, but not limited to, deprivation and loss of amounts due under the Guzzler Note and the deprivation of its rights in the Equipment.

57.    By reason of its default, C&B Foster owes Guzzler the amount due under the Guzzler Note as of January 8, 2008 of $155,940.15 plus i) interest and late fees accruing from and after January 8, 2008; and ii) costs and reasonable attorneys' fees incurred with the enforcement of the Guzzler Note.

WHEREFORE, Guzzler prays that:

A.    after full credit for the sale proceeds of the Guzzler ACE Equipment, judgment be entered against C&B Foster and in favor of Guzzler in the amount due under the Guzzler Note of $155,940.15 plus i) interest and late fees accruing from and after January 8, 2008; and ii) costs and reasonable attorneys' fees incurred with the enforcement of the Guzzler Note; and

B.    Guzzler be granted such other and further relief as shall be just and equitable.

\4853514.3

Date:   January 16, 2008                         McGuireWoods LLP


                                                 By:  _s/ Andrew R. Woltman_____
                                                     Attorney for Plaintiffs


Richard J. Mason
John F. Pollick
Andrew R. Woltman
MCGUIREWOODS LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL  60601
312-849-8100

.4853514.3

## VERIFICATION

I, Gail Corrigan, in my capacity as Account Manager for Vactor Manufacturing, Inc., pursuant to 28 U.S.C. § 1746, verify under penalty of perjury that the foregoing factual statements as set forth in this Verified Complaint dated January __, 2008, are true and correct to the best of my knowledge.

Executed on January _16_, 2008

By:    Gail Corrigan
Title:    Account Manager for Vactor
Manufacturing, Inc.

Subscribed to and sworn to before me, a Notary Public, this _16_ day of January 2008.

My commission expires: _12/21/2011_

Notary Public

> OFFICIAL SEAL
> LANA J NOEL
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:12/21/11

4853514.3

# EXHIBIT  A

## INSTALLMENT NOTE (SECURED)

Amount:                                                          Oak Brook, Illinois

$54,809.70                                                      Date: January 6, 2000

For value received, C & B Foster, Inc. ("Borrower"), promises to pay to the order of Jetstream of Houston, Inc., or its assigns ("Lender"), at 1415 West 22nd Street, Suite 1100, Oak Brook, Illinois 60523, the sum of Fifty Four Thousand Eight Hundred Nine, and 70/100 Dollars ($54,809.70) principal, plus interest on the outstanding balance at an annual rate of 10.73%, payable in accordance with Schedule A attached hereto in Three (3) Monthly installments of Five Hundred Forty One and 76/100 Dollars ($541.76) per month, beginning one month from the date of acceptance shown on Exhibit C hereto then Forty Seven (47) monthly installments of One Thousand Three Hundred Sixty Two and 21/100 Dollars ($1,362.21). Borrower's obligations and liabilities to Lender under this Note, and all other obligations of Borrower to Lender or any of Lender's affiliates howsoever evidenced, created or incurred shall be defined and referred to herein as the "Liabilities." Payments not made when due shall bear interest at the rate of 18% per annum or the highest rate permitted by law, whichever is less.

To secure prompt payment to Lender of the Liabilities, and the prompt performance of all obligations, Borrower hereby grants to Lender a security interest in the equipment described in Exhibit B hereto plus all accessories, parts and equipment now or hereafter affixed thereto (the "Collateral"). Borrower hereby agrees to take all necessary steps to perfect Lender's security interest in the Collateral. Borrower hereby agrees and does hereby appoint Lender or its agents or assigns its true and lawful attorney-in-fact to prepare, execute and sign any instrument or financing statement necessary to protect Lender's interest in the Equipment subject hereto, and to sign the name of Borrower with the same force and effect as if signed by Borrower, and to file same at the proper location or locations. Borrower further agrees, if Lender so requests, to execute any instrument or financing statement necessary to protect Lender's interest in the Equipment.

Until Default (as defined herein), Borrower may retain possession of the Collateral and use the same in any lawful manner not inconsistent with the terms hereof or with any policy of insurance on the Collateral.

Borrower hereby agrees to adhere to the maintenance schedule provided by the manufacturer outlined in the manufacturer's user manual and maintain the equipment on an ongoing basis according to that schedule for the life of the installment note period.

Borrower hereby warrants and agrees that: (1) it will not sell, transfer, lease or otherwise dispose of any of the Collateral or any interest therein except with the prior written consent of Lender; (2) it will at all times keep the Collateral in good working order and repair; (3) it will at all times keep the Collateral insured with the following coverage:

a.     Auto Physical Damage/Collision coverage for the full value of the Equipment.

b.     Automobile Comprehensive/Theft coverage for the full value of the Equipment.

c.     Auto Liability Insurance in the amount of $1,000,000.

-2-

All coverages shall be evidenced by a Certificate of Insurance naming Jetstream of Houston, Inc. as Additional Insured and Loss Payee; (4) Borrower shall pay the premiums for such insurance and shall deliver certificates to Lender, together with endorsements thereon or independent instruments whereby insurer agrees that it will give Lender a right to thirty (30) days written notice before said policies can be cancelled; and, (5) Lender and/or its agents may examine and inspect the Collateral or any part thereof, wherever located, at any reasonable time or times. Lender reserves the right but not the obligation to perform any obligation of Borrower which Borrower shall fail to perform and take any other action which Lender deems necessary for the maintenance or preservation of any of the Collateral or its interest therein, and the Borrower agrees to reimburse Lender for all such expenses, together with interest thereon at the lesser of 18% per annum or the highest rate permitted by law, from the date incurred until reimbursed by the undersigned.

The occurrence of any of the following events shall constitute a Default (as such term is used herein): (a) nonpayment, when due, of the Liabilities or failure to perform any obligation contained herein; (b) any statement, representation or warranty of the Borrower made or given to Lender shall be untrue; (c) any Obligor (which term as used herein shall refer to Borrower or any Guarantor) shall file or have filed against it a petition in bankruptcy or, become insolvent; (d) the death or incapacity of all Obligors who are natural persons, or; (e) the dissolution, merger or transfer of a substantial part of the property of any Obligor which is a corporation or a partnership, or; (f) the borrower fails to perform all/part of the scheduled maintenance as outlined by the manufacturer in the manufacturer's user manual.

Whenever a Default is existing, Lender may declare all Liabilities without presentment, demand or notice of any kind, immediately due and payable, and Lender shall be entitled to immediate possession of the Collateral, and Lender may exercise any other rights and remedies available to it under applicable law. The undersigned agrees, in case of Default, to assemble, at its expense, all the Collateral at a convenient place acceptable to Lender and to pay all costs of collection, and enforcement of rights hereunder, including reasonable attorneys' fees. If any notice of sale of any of the Collateral is required by law, such notification shall be deemed reasonably and property given if mailed at least five days before such disposition, postage prepaid to the last known address of Borrower. Any proceeds of any disposition of any of the Collateral may be applied by Lender to the payment of expenses, interest and collateral in such order of application, as Lender may elect.

This Agreement constitutes an obligation of Borrower to make payments of principal plus interest, and Borrower shall have no right to prepay any of the Liabilities.

No delay or failure to exercise any right of Lender shall operate as a waiver thereof.

This Note is made at Oak Brook, Illinois and shall be interpreted in accordance with the laws of the State of Illinois. Borrower irrevocably agrees to submit to the jurisdiction of the courts of the State of Illinois and Service of Process by Certified Mail. Borrower hereby acknowledges and agrees that Illinois is the proper venue in the event a lawsuit is necessary to enforce the parties' rights and obligations under this Note.

-3-

Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

The rights and privileges of Lender hereunder shall inure to the benefit of its successors and assigns.

This Agreement has been duly executed as of the 27 day of JAN, 2000.

C & B Foster, Inc.

By: _____

Title: _____

## PERSONAL GUARANTEE

For value received, the undersigned hereby unconditionally guarantees the full and prompt payment of the Liabilities (as defined in the foregoing Installment Note and agrees to pay all costs, expenses and attorneys' fees incurred by holder in collecting the same and in enforcing this Guarantee.

The undersigned agrees that his liability hereunder shall in no way be effected or impaired, nor shall Guarantor be discharged in whole or in part, by any of the following occurrences: (1) the death, incompetency, insolvency, bankruptcy, dissolution or withdrawal of Borrower or any Guarantor; (2) modification, renewal, refinancing or extension of the time of payment of any installments of the Liabilities; (3) acceptance by holder of partial payment of any installment; (4) release, surrender, sale, exchange or substitution by holder of all or any part of the Collateral of Borrower or of any other Guarantor; (5) release by holder of any one or more of the undersigned Guarantors or acceptance of additional Guarantors; or (6) failure of holder to perfect any security interest in the Collateral of Borrower or of any Guarantor or to record or register any lien or encumbrance thereon.

It is expressly agreed by the undersigned that it shall not be necessary for holder to proceed first against the Borrower or any other Guarantor, or to have recourse to the Collateral before proceeding to enforce this guarantee or as a condition to payment or performance by Guarantors hereon. It is further agreed that holder shall have the exclusive right to determine how payments, credits and proceeds are to be applied.

-4-

The undersigned waives demand, notice of dishonor, presentment for payment, diligence in collection, acceptance of this guarantee and notice of any adverse change in the financial condition of Borrower or any Guarantor or of any other fact that might materially increase the risk of the Guarantor hereon. This guarantee shall be binding upon the undersigned and upon the heirs, legal representatives, successors and assigns of the undersigned, and each of them, and shall inure to the benefit of holder, its successors and assigns. The validity and construction of this guarantee shall be governed by the laws of the State of Illinois.

Witness my hand and seal this _10th_ day of _January_, 2000.

_Bruce Foster_
Bruce Foster

Social Security #         _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_

Home Address:            _2039 McDade Rd_
                         _HEPHZIBAH  GA  30815_

Home Telephone #:        _706-592-5160_

STATE OF _GA_           )

COUNTY OF _Richmond_    )

I, _Lavonia E. Loren_ a Notary Public, do hereby certify that on the _22_ day of _Jan._, 2000, personally appeared before me Bruce Foster, who acknowledged that he signed the foregoing document and declared that the statements therein contained are true.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

_Lavonia E. Loren_
Notary Public
Com. exp. Sept. 2000

NOTARIAL SEAL

JAN-26-2020  15:48    FSC    1 630 954 2041  P.06

## Schedule A

Lessee: **C & B Fosters, Inc.**
Equip: **Jetstream Series 3600 S/N 99448**                     Lease No: **0448-900**

Number and frequency of payments:

| 50 Monthly payments in arrears |
| :-- |
| Interest computed at 10.73 % per annum |

| | | Payment Amount | Payment applied to Interest | Principal | Purchase price (remaining balance) |
|---|---|---|---|---|---|
| Total sales price | | | | | $54,809.70 |
| Trade-in allowed | | | | 0.00 | 54,809.70 |
| Down payment | | | | 2,500.00 | 52,309.70 |
| Payment | 1 | 2/3/00 | 541.76 | 467.74 | 74.02 | 52,235.68 |
| Payment | 2 | 3/3/00 | 541.76 | 467.07 | 74.69 | 52,160.99 |
| Payment | 3 | 4/3/00 | 541.76 | 466.41 | 75.35 | 52,085.64 |
| Payment | 4 | 5/3/00 | 1,362.21 | 465.73 | 895.48 | 51,189.16 |
| Payment | 5 | 6/3/00 | 1,362.21 | 457.72 | 904.49 | 50,284.67 |
| Payment | 6 | 7/3/00 | 1,362.21 | 449.63 | 912.58 | 49,372.09 |
| Payment | 7 | 8/3/00 | 1,362.21 | 441.47 | 920.74 | 48,451.35 |
| Payment | 8 | 9/3/00 | 1,362.21 | 433.24 | 928.97 | 47,522.38 |
| Payment | 9 | 10/3/00 | 1,362.21 | 424.93 | 937.28 | 46,585.10 |
| Payment | 10 | 11/3/00 | 1,362.21 | 416.55 | 945.66 | 45,639.44 |
| Payment | 11 | 12/3/00 | 1,362.21 | 408.09 | 954.12 | 44,685.32 |
| Payment | 12 | 1/3/01 | 1,362.21 | 399.56 | 962.65 | 43,722.67 |
| Payment | 13 | 2/3/01 | 1,362.21 | 390.95 | 971.26 | 42,751.41 |
| Payment | 14 | 3/3/01 | 1,362.21 | 382.27 | 979.94 | 41,771.47 |
| Payment | 15 | 4/3/01 | 1,362.21 | 373.51 | 988.70 | 40,782.77 |
| Payment | 16 | 5/3/01 | 1,362.21 | 364.67 | 997.54 | 39,785.23 |
| Payment | 17 | 6/3/01 | 1,362.21 | 355.75 | 1,006.46 | 38,778.77 |
| Payment | 18 | 7/3/01 | 1,362.21 | 346.76 | 1,015.45 | 37,763.31 |
| Payment | 19 | 8/3/01 | 1,362.21 | 337.67 | 1,024.54 | 36,738.77 |
| Payment | 20 | 9/3/01 | 1,362.21 | 328.51 | 1,033.70 | 35,705.07 |
| Payment | 21 | 10/3/01 | 1,362.21 | 319.26 | 1,042.95 | 34,662.12 |
| Payment | 22 | 11/3/01 | 1,362.21 | 309.94 | 1,052.27 | 33,609.85 |
| Payment | 23 | 12/3/01 | 1,362.21 | 300.53 | 1,061.68 | 32,548.17 |
| Payment | 24 | 1/3/02 | 1,362.21 | 281.03 | 1,071.18 | 31,476.99 |
| Payment | 25 | 2/3/02 | 1,362.21 | 281.46 | 1,080.75 | 30,396.24 |
| Payment | 26 | 3/3/02 | 1,362.21 | 271.79 | 1,090.42 | 29,305.82 |
| Payment | 27 | 4/3/02 | 1,362.21 | 262.04 | 1,100.17 | 28,205.65 |
| Payment | 28 | 5/3/02 | 1,362.21 | 252.21 | 1,110.00 | 27,095.65 |
| Payment | 29 | 6/3/02 | 1,362.21 | 242.28 | 1,119.93 | 25,975.72 |
| Payment | 30 | 7/3/02 | 1,362.21 | 232.27 | 1,129.94 | 24,845.78 |
| Payment | 31 | 8/3/02 | 1,362.21 | 222.16 | 1,140.05 | 23,708.73 |
| Payment | 32 | 9/3/02 | 1,362.21 | 211.97 | 1,150.24 | 22,555.49 |
| Payment | 33 | 10/3/02 | 1,362.21 | 201.68 | 1,160.53 | 21,394.96 |
| Payment | 34 | 11/3/02 | 1,362.21 | 191.31 | 1,170.90 | 20,224.06 |
| Payment | 35 | 12/3/02 | 1,362.21 | 180.84 | 1,181.37 | 19,042.69 |
| Payment | 36 | 1/3/03 | 1,362.21 | 170.27 | 1,191.94 | 17,850.75 |
| Payment | 37 | 2/3/03 | 1,362.21 | 159.62 | 1,202.59 | 16,646.16 |
| Payment | 38 | 3/3/03 | 1,362.21 | 148.86 | 1,213.35 | 15,434.81 |
| Payment | 39 | 4/3/03 | 1,362.21 | 138.01 | 1,224.20 | 14,210.61 |

1                                                  C & B Fosters, Inc..xls:1/8/00:9:12 AM

01/27/00  21:06  FAX 1 630 954 2045  Case 1:08-cv-00374  Document 1  CB FINANCIAL TECH  08/21/2008  Page 19 of 40  ☒07
01/10 '00 16:57    ID:LANIERFAX4500                FAX:                    PAGE    4

JAN-26-2000  15:40        FSC                          1 630 954 2041  P.07

## Schedule A

Lessee: C & B Fosters, Inc.
Equip: Jetstream Series 3600 S/N 99448                    Lease No:    0448-900

Number and frequency of payments:

| 50 Monthly payments in arrears<br>interest computed at 10.73 % per annum |
|---|

|  |  |  | Payment<br>Amount | Payment applied to<br>Interest | Principal | Purchase<br>price<br>(remaining<br>balance) |
|---|---|---|---|---|---|---|
| Payment | 40 | 5/3/03 | 1,362.21 | 127.07 | 1,235.14 | 12,075.47 |
| Payment | 41 | 6/3/03 | 1,362.21 | 116.02 | 1,246.19 | 11,729.28 |
| Payment | 42 | 7/3/03 | 1,362.21 | 104.88 | 1,257.33 | 10,471.95 |
| Payment | 43 | 8/3/03 | 1,362.21 | 93.64 | 1,268.57 | 9,203.38 |
| Payment | 44 | 9/3/03 | 1,362.21 | 82.29 | 1,279.92 | 7,923.46 |
| Payment | 45 | 10/3/03 | 1,362.21 | 70.85 | 1,291.36 | 6,632.10 |
| Payment | 46 | 11/3/03 | 1,362.21 | 59.30 | 1,302.91 | 5,329.19 |
| Payment | 47 | 12/3/03 | 1,362.21 | 47.65 | 1,314.56 | 4,014.63 |
| Payment | 48 | 1/3/04 | 1,362.21 | 35.90 | 1,326.31 | 2,688.32 |
| Payment | 49 | 2/3/04 | 1,362.21 | 24.04 | 1,338.17 | 1,350.15 |
| Payment | 50 | 3/3/04 | 1,362.21 | 12.06 | 1,350.15 | 0.00 |

|  | Totals | 65,649.16 | 13,339.46 | 62,309.70 |
|---|---|---|---|---|

Balances not paid when due shall be subject to past due interest at
the rate of 18% per year or the highest rate permitted by law,
whichever is less.

Interest accrues daily, at the rate indicated above, on the
outstanding principal balance (listed in "Purchase price" column).

Jetstream of Houston, Inc.                                C & B Fosters, Inc.
Lender                                                    Borrower

By: _____                    By: _____

Title: _____                  Title: _____

2                                      C & B Fosters, Inc..xls: 1/6/00:9:12 AM

Case 1:08-cv-00374    Document 19    Filed 08/21/2008    Page 23 of 43
01/27/00 Case 1:08-cv-00374 CB ENVIRONMENTAL Document 1  Filed 01/16/2008    Page 20 of 40   @09
01/07 '00 22:42    ID:LANIERFAX4500    FAX:    PAGE    4
JAN-24-2000  12:17    FSC    1 630 954 2041    P.04/05

Schedule B

**EQUIPMENT DESCRIPTION**

Jetstream S/N 99448 Series 3800



Bruce Ford   1/25/00
President,

### INSTALLMENT NOTE (SECURED)
#### Reference Lease No. 0448-902

Amount:                                                    Oak Brook, Illinois

$179,560.00                                              Date: October 9, 2000

For value received, C & B Foster, Inc. ("Borrower"), promises to pay to the order of Jetstream of Houston, Inc., or its assigns ("Lender"), at 1415 West 22nd Street, Suite 1100, Oak Brook, Illinois 60523, the sum of One Hundred Seventy-nine Thousand Five Hundred Sixty, and 00/100 Dollars ($179,560.00) principal, plus interest on the outstanding balance at an annual rate of 11.19%, payable in accordance with Schedule A attached hereto in (60) Monthly Installments of Three Thousand, Nine Hundred Twenty-one and 11/100 Dollars ($3,921.11) per month, beginning one month from the date of acceptance shown on Exhibit C hereto. Borrower's obligations and liabilities to Lender under this Note, and all other obligations of Borrower to Lender or any of Lender's affiliates howsoever evidenced, created or incurred shall be defined and referred to herein as the "Liabilities." Payments not made when due shall bear interest at the rate of 18% per annum or the highest rate permitted by law, whichever is less.

To secure prompt payment to Lender of the Liabilities, and the prompt performance of all obligations, Borrower hereby grants to Lender a security interest in the equipment described in Exhibit B hereto plus all accessories, parts and equipment now or hereafter affixed thereto (the "Collateral"). Borrower hereby agrees to take all necessary steps to perfect Lender's security interest in the Collateral. Borrower hereby agrees and does hereby appoint Lender or its agents or assigns its true and lawful attorney-in-fact to prepare, execute and sign any instrument or financing statement necessary to protect Lender's interest in the Equipment subject hereto, and to sign the name of Borrower with the same force and effect as if signed by Borrower, and to file same at the proper location or locations. Borrower further agrees, if Lender so requests, to execute any instrument or financing statement necessary to protect Lender's interest in the Equipment.

Until Default (as defined herein), Borrower may retain possession of the Collateral and use the same in any lawful manner not inconsistent with the terms hereof or with any policy of insurance on the Collateral.

Borrower hereby agrees to adhere to the maintenance schedule provided by the manufacturer outlined in the manufacturer's user manual and maintain the equipment on an ongoing basis according to that schedule for the life of the installment note period.

Borrower hereby warrants and agrees that: (1) it will not sell, transfer, lease or otherwise dispose of any of the Collateral or any interest therein except with the prior written consent of Lender; (2) it will at all times keep the Collateral in good working order and repair; (3) it will at all times keep the Collateral insured with the following coverage:

a.      Auto Physical Damage/Collision coverage for the full value of the Equipment.

b.      Automobile Comprehensive/Theft coverage for the full value of the Equipment.

c.      Auto Liability Insurance in the amount of $1,000,000.

10/09/00 11:14 AM

-2-

All coverages shall be evidenced by a Certificate of Insurance naming Jetstream of Houston, Inc. as Additional Insured and Loss Payee; (4) Borrower shall pay the premiums for such insurance and shall deliver certificates to Lender, together with endorsements thereon or independent instruments whereby insurer agrees that it will give Lender a right to thirty (30) days written notice before said policies can be cancelled; and, (5) Lender and/or its agents may examine and inspect the Collateral or any part thereof, wherever located, at any reasonable time or times.  Lender reserves the right but not the obligation to perform any obligation of Borrower which Borrower shall fail to perform and take any other action which Lender deems necessary for the maintenance or preservation of any of the Collateral or its interest therein, and the Borrower agrees to reimburse Lender for all such expenses, together with interest thereon at the lesser of 18% per annum or the highest rate permitted by law, from the date incurred until reimbursed by the undersigned.

The occurrence of any of the following events shall constitute a Default (as such term is used herein): (a) nonpayment, when due, of the Liabilities or failure to perform any obligation contained herein; (b) any statement, representation or warranty of the Borrower made or given to Lender shall be untrue; (c) any Obligor (which term as used herein shall refer to Borrower or any Guarantor) shall file or have filed against it a petition in bankruptcy or, become insolvent; (d) the death or incapacity of all Obligors who are natural persons, or; (e) the dissolution, merger or transfer of a substantial part of the property of any Obligor which is a corporation or a partnership, or; (f) the borrower fails to perform all/part of the scheduled maintenance as outlined by the manufacturer in the manufacturer's user manual.

Whenever a Default is existing, Lender may declare all Liabilities without presentment, demand or notice of any kind, immediately due and payable, and Lender shall be entitled to immediate possession of the Collateral, and Lender may exercise any other rights and remedies available to it under applicable law. The undersigned agrees, in case of Default, to assemble, at its expense, all the Collateral at a convenient place acceptable to Lender and to pay all costs of collection, and enforcement of rights hereunder, including reasonable attorneys' fees. If any notice of sale of any of the Collateral is required by law, such notification shall be deemed reasonably and properly given if mailed at least five days before such disposition, postage prepaid to the last known address of Borrower. Any proceeds of any disposition of any of the Collateral may be applied by Lender to the payment of expenses, interest and collateral in such order of application, as Lender may elect.

This Agreement constitutes an obligation of Borrower to make payments of principal plus interest, and Borrower shall have no right to prepay any of the Liabilities.

No delay or failure to exercise any right of Lender shall operate as a waiver thereof.

This Note is made at Oak Brook, Illinois and shall be interpreted in accordance with the laws of the State of Illinois. Borrower irrevocably agrees to submit to the jurisdiction of the courts of the State of Illinois and Service of Process by Certified Mail. Borrower hereby acknowledges and agrees that Illinois is the proper venue in the event a lawsuit is necessary to enforce the parties' rights and obligations under this Note.

10/09/00 11:14 AM

-3-

Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

The rights and privileges of Lender hereunder shall inure to the benefit of its successors and assigns.

This Agreement has been duly executed as of the _6_ day of _DEC._ , 2000.

C & B Foster, Inc.

By: _____

Title: _____

## PERSONAL GUARANTEE

For value received, the undersigned hereby unconditionally guarantees the full and prompt payment of the Liabilities (as defined in the foregoing Installment Note and agrees to pay all costs, expenses and attorneys' fees incurred by holder in collecting the same and in enforcing this Guarantee.

The undersigned agrees that his liability hereunder shall in no way be affected or impaired, nor shall Guarantor be discharged in whole or in part, by any of the following occurrences: (1) the death, incompetency, insolvency, bankruptcy, dissolution or withdrawal of Borrower or any Guarantor; (2) modification, renewal, refinancing or extension of the time of payment of any installments of the Liabilities; (3) acceptance by holder of partial payment of any installment; (4) release, surrender, sale, exchange or substitution by holder of all or any part of the Collateral of Borrower or of any other Guarantor; (5) release by holder of any one or more of the undersigned Guarantors or acceptance of additional Guarantors; or (6) failure of holder to perfect any security interest in the Collateral of Borrower or of any Guarantor or to record or register any lien or encumbrance thereon.

It is expressly agreed by the undersigned that it shall not be necessary for holder to proceed first against the Borrower or any other Guarantor, or to have recourse to the Collateral before proceeding to enforce this guarantee or as a condition to payment or performance by Guarantors hereon. It is further agreed that holder shall have the exclusive right to determine how payments, credits and proceeds are to be applied.

10/09/00 11:14 AM

-4-

The undersigned waives demand, notice of dishonor, presentment for payment, diligence in collection, acceptance of this guarantee and notice of any adverse change in the financial condition of Borrower or any Guarantor or of any other fact that might materially increase the risk of the Guarantor hereon. This guarantee shall be binding upon the undersigned and upon the heirs, legal representatives, successors and assigns of the undersigned, and each of them, and shall inure to the benefit of holder, its successors and assigns. The validity and construction of this guarantee shall be governed by the laws of the State of Illinois.

Witness my hand and seal this _6_ day of _DEC._ , 2000.

Bruce Foster

Social Security #    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

Home Address:    2039 Mcdade Rd
Hiphzibah GA 30815

Home Telephone #:    592-5160

STATE OF Georgia
COUNTY OF Richmond

I Lavonia E. Loe a Notary Public, do hereby certify that on the 16th day of December, 2000, personally appeared before me Bruce Foster, who acknowledged that they signed the foregoing document and declared that the statements therein contained are true.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

Lavonia E. Loen
Notary Public

NOTARIAL SEAL.

Comm. expires
Sept 6th 2004.

10/09/00 11:14 AM

## Schedule A

Lessee:  C & B Foster
Equip:   Jetstream 20K and 40K Waterblaster

Lease No:    0448-902

Number and frequency of payments:

| 60 Monthly payments in arrears |
| Interest computed at 11.19 % per annum |

| | | Payment Amount | Payment applied to Interest | Principal | Purchase price (remaining balance) |
|---|---|---|---|---|---|
| Total sales price | | | | | $211,560.00 |
| Trade-In allowed | | | | 0.00 | 211,560.00 |
| Down payment | | | | 32,000.00 | 179,560.00 |
| Payment | 1  1/15/01 | 3,921.11 | 1,674.40 | 2,246.71 | 177,313.29 |
| Payment | 2 | 3,921.11 | 1,653.45 | 2,267.66 | 175,045.63 |
| Payment | 3 | 3,921.11 | 1,632.30 | 2,288.81 | 172,756.82 |
| Payment | 4 | 3,921.11 | 1,610.96 | 2,310.15 | 170,446.67 |
| Payment | 5 | 3,921.11 | 1,589.42 | 2,331.69 | 168,114.98 |
| Payment | 6 | 3,921.11 | 1,567.67 | 2,353.44 | 165,761.54 |
| Payment | 7 | 3,921.11 | 1,545.73 | 2,375.38 | 163,386.16 |
| Payment | 8 | 3,921.11 | 1,523.58 | 2,397.53 | 160,988.63 |
| Payment | 9 | 3,921.11 | 1,501.22 | 2,419.89 | 158,568.74 |
| Payment | 10 | 3,921.11 | 1,478.65 | 2,442.46 | 156,126.28 |
| Payment | 11 | 3,921.11 | 1,455.86 | 2,465.23 | 153,661.05 |
| Payment | 12 | 3,921.11 | 1,432.89 | 2,488.22 | 151,172.83 |
| Payment | 13 | 3,921.11 | 1,409.69 | 2,511.42 | 148,661.41 |
| Payment | 14 | 3,921.11 | 1,386.27 | 2,534.84 | 146,126.57 |
| Payment | 15 | 3,921.11 | 1,362.63 | 2,558.48 | 143,568.09 |
| Payment | 16 | 3,921.11 | 1,336.77 | 2,582.34 | 140,985.75 |
| Payment | 17 | 3,921.11 | 1,314.69 | 2,606.42 | 138,379.33 |
| Payment | 18 | 3,921.11 | 1,290.39 | 2,630.72 | 136,748.61 |
| Payment | 19 | 3,921.11 | 1,265.86 | 2,655.25 | 133,093.36 |
| Payment | 20 | 3,921.11 | 1,241.10 | 2,680.01 | 130,413.35 |
| Payment | 21 | 3,921.11 | 1,216.10 | 2,705.01 | 127,708.34 |
| Payment | 22 | 3,921.11 | 1,190.88 | 2,730.23 | 124,978.11 |
| Payment | 23 | 3,921.11 | 1,165.42 | 2,755.69 | 122,222.42 |
| Payment | 24 | 3,921.11 | 1,139.72 | 2,781.39 | 119,441.03 |
| Payment | 25 | 3,921.11 | 1,113.79 | 2,807.32 | 116,633.71 |
| Payment | 26 | 3,921.11 | 1,087.61 | 2,833.50 | 113,800.21 |
| Payment | 27 | 3,921.11 | 1,061.19 | 2,859.92 | 110,940.29 |
| Payment | 28 | 3,921.11 | 1,034.52 | 2,886.59 | 108,053.70 |
| Payment | 29 | 3,921.11 | 1,007.60 | 2,913.51 | 105,140.19 |
| Payment | 30 | 3,921.11 | 980.43 | 2,940.68 | 102,199.51 |
| Payment | 31 | 3,921.11 | 953.01 | 2,968.10 | 99,231.41 |
| Payment | 32 | 3,921.11 | 925.33 | 2,995.78 | 96,235.63 |
| Payment | 33 | 3,921.11 | 897.40 | 3,023.71 | 93,211.92 |
| Payment | 34 | 3,921.11 | 869.20 | 3,051.91 | 90,160.01 |
| Payment | 35 | 3,921.11 | 840.74 | 3,080.37 | 87,079.64 |
| Payment | 36 | 3,921.11 | 812.02 | 3,109.09 | 83,970.55 |
| Payment | 37 | 3,921.11 | 783.03 | 3,138.08 | 80,832.47 |
| Payment | 38 | 3,921.11 | 753.76 | 3,167.35 | 77,665.12 |
| Payment | 39 | 3,921.11 | 724.23 | 3,196.88 | 74,468.24 |

1

C & B Foster:10/09/2000:10:18 AM

## Schedule A

Lessee:  C & B Foster
Equip:   Jetstream 20K and 40K Waterblaster          Lease No:    0448-902

Number and frequency of payments:

| 60 Monthly payments in arrears |
|---|
| Interest computed at 11.19 % per annum |

| | | Payment Amount | Payment applied to Interest | Payment applied to Principal | Purchase price (remaining balance) |
|---|---|---|---|---|---|
| Payment | 40 | 3,921.11 | 694.42 | 3,226.69 | 71,241.55 |
| Payment | 41 | 3,921.11 | 664.33 | 3,256.78 | 67,984.77 |
| Payment | 42 | 3,921.11 | 633.96 | 3,287.15 | 64,697.62 |
| Payment | 43 | 3,921.11 | 603.31 | 3,317.80 | 61,379.82 |
| Payment | 44 | 3,921.11 | 572.37 | 3,348.74 | 58,031.08 |
| Payment | 46 | 3,921.11 | 541.14 | 3,379.97 | 54,651.11 |
| Payment | 46 | 3,921.11 | 509.62 | 3,411.49 | 51,239.62 |
| Payment | 47 | 3,921.11 | 477.81 | 3,443.30 | 47,796.32 |
| Payment | 48 | 3,921.11 | 445.70 | 3,475.41 | 44,320.91 |
| Payment | 49 | 3,921.11 | 413.29 | 3,507.82 | 40,813.09 |
| Payment | 50 | 3,921.11 | 380.58 | 3,540.53 | 37,272.56 |
| Payment | 51 | 3,921.11 | 347.57 | 3,573.54 | 33,699.02 |
| Payment | 52 | 3,921.11 | 314.24 | 3,606.87 | 30,092.15 |
| Payment | 53 | 3,921.11 | 280.61 | 3,640.50 | 26,461.65 |
| Payment | 54 | 3,921.11 | 246.66 | 3,674.45 | 22,777.20 |
| Payment | 55 | 3,921.11 | 212.40 | 3,708.71 | 19,068.49 |
| Payment | 56 | 3,921.11 | 177.81 | 3,743.30 | 15,325.19 |
| Payment | 57 | 3,921.11 | 142.91 | 3,778.20 | 11,546.99 |
| Payment | 58 | 3,921.11 | 107.68 | 3,813.43 | 7,733.56 |
| Payment | 59 | 3,921.11 | 72.12 | 3,848.99 | 3,884.57 |
| Payment | 60 | 3,921.11 | 36.54 | 3,884.57 | 0.00 |

|  | Totals | 235,266.60 | 55,706.60 | 179,560.00 | |

Balances not paid when due shall be subject to past due interest at
the rate of 18% per year or the highest rate permitted by law,
whichever is less.

Interest accrues daily, at the rate indicated above, on the
outstanding principal balance (listed in "Purchase price" column).

Jetstream of Houston, Inc.
Lender

By: _____

Title: _____

C & B Foster
Borrower

By: _____

Title: _____

2

C & B Foster:10/09/2000;10:18 AM

Schedule B

## EQUIPMENT DESCRIPTION

Jetstream PSI 4220 (Serial No. 00496) and PSI 4240 (Serial No. 00497) Waterblaster

10/09/00 11:14 AM

**INSTALLMENT NOTE (SECURED)**
Reference Lease No. 0448-901

Amount:

Oak Brook, Illinois

$206,068.18

Date: September 14, 2000

For value received, C & B Foster, Inc. ("Borrower"), promises to pay to the order of Guzzler Manufacturing, Inc., or its assigns ("Lender"), at 1415 West 22nd Street, Suite 1100, Oak Brook, Illinois 60523, the sum of Two Hundred Six Thousand Sixty Eight, and 18/100 Dollars ($206,068.18) principal, plus interest on the outstanding balance at an annual rate of 10.99%, payable in accordance with Schedule A attached hereto in (60) Monthly installments of Four Thousand, Four Hundred Seventy Nine and 39/100 Dollars ($4,479.39) per month, beginning one month from the date of acceptance shown on Exhibit C hereto. Borrower's obligations and liabilities to Lender under this Note, and all other obligations of Borrower to Lender or any of Lender's affiliates howsoever evidenced, created or incurred shall be defined and referred to herein as the "Liabilities." Payments not made when due shall bear interest at the rate of 18% per annum or the highest rate permitted by law, whichever is less.

To secure prompt payment to Lender of the Liabilities, and the prompt performance of all obligations, Borrower hereby grants to Lender a security interest in the equipment described in Exhibit B hereto plus all accessories, parts and equipment now or hereafter affixed thereto (the "Collateral"). Borrower hereby agrees to take all necessary steps to perfect Lender's security interest in the Collateral. Borrower hereby agrees and does hereby appoint Lender or its agents or assigns its true and lawful attorney-in-fact to prepare, execute and sign any instrument or financing statement necessary to protect Lender's interest in the Equipment subject hereto, and to sign the name of Borrower with the same force and effect as if signed by Borrower, and to file same at the proper location or locations. Borrower further agrees, if Lender so requests, to execute any instrument or financing statement necessary to protect Lender's interest in the Equipment.

Until Default (as defined herein), Borrower may retain possession of the Collateral and use the same in any lawful manner not inconsistent with the terms hereof or with any policy of insurance on the Collateral.

Borrower hereby agrees to adhere to the maintenance schedule provided by the manufacturer outlined in the manufacturer's user manual and maintain the equipment on an ongoing basis according to that schedule for the life of the installment note period.

Borrower hereby warrants and agrees that: (1) it will not sell, transfer, lease or otherwise dispose of any of the Collateral or any interest therein except with the prior written consent of Lender; (2) it will at all times keep the Collateral in good working order and repair; (3) it will at all times keep the Collateral insured with the following coverage:

a.    Auto Physical Damage/Collision coverage for the full value of the Equipment.

b.    Automobile Comprehensive/Theft coverage for the full value of the Equipment.

c.    Auto Liability Insurance in the amount of $1,000,000.

09/14/00 4:25 PM

-2-

All coverages shall be evidenced by a Certificate of Insurance naming Guzzler Manufacturing, Inc. as Additional Insured and Loss Payee; (4) Borrower shall pay the premiums for such Insurance and shall deliver certificates to Lender, together with endorsements thereon or independent instruments whereby Insurer agrees that it will give Lender a right to thirty (30) days written notice before said policies can be cancelled; and, (5) Lender and/or its agents may examine and inspect the Collateral or any part thereof, wherever located, at any reasonable time or times. Lender reserves the right but not the obligation to perform any obligation of Borrower which Borrower shall fail to perform and take any other action which Lender deems necessary for the maintenance or preservation of any of the Collateral or its interest therein, and the Borrower agrees to reimburse Lender for all such expenses, together with interest thereon at the lesser of 18% per annum or the highest rate permitted by law, from the date incurred until reimbursed by the undersigned.

The occurrence of any of the following events shall constitute a Default (as such term is used herein): (a) nonpayment, when due, of the Liabilities or failure to perform any obligation contained herein; (b) any statement, representation or warranty of the Borrower made or given to Lender shall be untrue; (c) any Obligor (which term as used herein shall refer to Borrower or any Guarantor) shall file or have filed against it a petition in bankruptcy or, become insolvent; (d) the death or incapacity of all Obligors who are natural persons, or; (e) the dissolution, merger or transfer of a substantial part of the property of any Obligor which is a corporation or a partnership, or; (f) the borrower fails to perform all/part of the scheduled maintenance as outlined by the manufacturer in the manufacturer's user manual.

Whenever a Default is existing, Lender may declare all Liabilities without presentment, demand or notice of any kind, immediately due and payable, and Lender shall be entitled to immediate possession of the Collateral, and Lender may exercise any other rights and remedies available to it under applicable law. The undersigned agrees, in case of Default, to assemble, at its expense, all the Collateral at a convenient place acceptable to Lender and to pay all costs of collection, and enforcement of rights hereunder, including reasonable attorneys' fees. If any notice of sale of any of the Collateral is required by law, such notification shall be deemed reasonably and properly given if mailed at least five days before such disposition, postage prepaid to the last known address of Borrower. Any proceeds of any disposition of any of the Collateral may be applied by Lender to the payment of expenses, interest and collateral in such order of application, as Lender may elect.

This Agreement constitutes an obligation of Borrower to make payments of principal plus interest, and Borrower shall have no right to prepay any of the Liabilities.

No delay or failure to exercise any right of Lender shall operate as a waiver thereof.

This Note is made at Oak Brook, Illinois and shall be interpreted in accordance with the laws of the State of Illinois. Borrower irrevocably agrees to submit to the jurisdiction of the courts of the State of Illinois and Service of Process by Certified Mail. Borrower hereby acknowledges and agrees that Illinois is the proper venue in the event a lawsuit is necessary to enforce the parties' rights and obligations under this Note.

09/14/00 4:25 PM

-3-

Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Agreement.

The rights and privileges of Lender hereunder shall inure to the benefit of its successors and assigns.

This Agreement has been duly executed as of the _15_ day of _Sept._ , 2000.

C & B Foster, Inc.

By: _Bruce Fort_

Title: _President - Owner._

## PERSONAL GUARANTEE

For value received, the undersigned hereby unconditionally guarantees the full and prompt payment of the Liabilities (as defined in the foregoing Installment Note and agrees to pay all costs, expenses and attorneys' fees incurred by holder in collecting the same and in enforcing this Guarantee.

The undersigned agrees that his liability hereunder shall in no way be affected or impaired, nor shall Guarantor be discharged in whole or in part, by any of the following occurrences: (1) the death, incompetency, insolvency, bankruptcy, dissolution or withdrawal of Borrower or any Guarantor; (2) modification, renewal, refinancing or extension of the time of payment of any installments of the Liabilities; (3) acceptance by holder of partial payment of any installment; (4) release, surrender, sale, exchange or substitution by holder of all or any part of the Collateral of Borrower or of any other Guarantor; (5) release by holder of any one or more of the undersigned Guarantors or acceptance of additional Guarantors; or (6) failure of holder to perfect any security interest in the Collateral of Borrower or of any Guarantor or to record or register any lien or encumbrance thereon.

It is expressly agreed by the undersigned that it shall not be necessary for holder to proceed first against the Borrower or any other Guarantor, or to have recourse to the Collateral before proceeding to enforce this guarantee or as a condition to payment or performance by Guarantors hereon. It is further agreed that holder shall have the exclusive right to determine how payments, credits and proceeds are to be applied.

09/14/00 4:25 PM

-4-

The undersigned waives demand, notice of dishonor, presentment for payment, diligence in collection, acceptance of this guarantee and notice of any adverse change in the financial condition of Borrower or any Guarantor or of any other fact that might materially increase the risk of the Guarantor hereon. This guarantee shall be binding upon the undersigned and upon the heirs, legal representatives, successors and assigns of the undersigned, and each of them, and shall inure to the benefit of holder, its successors and assigns. The validity and construction of this guarantee shall be governed by the laws of the State of Illinois.

Witness my hand and seal this _____ day of _____, 2000.

_Bruce Foster_
Bruce Foster

Social Security #        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

Home Address:           2059 Mcdacle Rd.

                        HEPhzibAh  GA  30815

Home Telephone #:       1-806-592-5160

STATE OF _Georgia_

COUNTY OF _Richmond_

I, _Lavonia E. Love_ a Notary Public, do hereby certify that on the _15th_ day of _September_, 2000, personally appeared before me Bruce Foster, who acknowledged that he signed the foregoing document and declared that the statements therein contained are true.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

_Lavonia E. Love_
Notary Public
Comm. expires 9-4-2004

NOTARIAL SEAL

SEP-14-2000  16:25                          6309542041                                    6309542041        P.06

## Schedule A

Lessee:    C & B Foster, Inc.
Equip:     Guzzler ACE 27"
           VIN#1HTGLATT81H639699                    Lease No:      0448-901
Number and frequency of payments:

| 60 Monthly payments in arrears |
|---|
| Interest computed at 10.99 % per annum |

|  |  | Payment Amount | Payment applied to | | Purchase price (remaining balance) |
|---|---|---|---|---|---|
|  |  |  | Interest | Principal |  |
| Total sales price |  |  |  |  | $217,068.18 |
| Trade-in allowed |  |  |  | 0.00 | 217,068.18 |
| Down payment |  |  |  | 11,000.00 | 206,068.18 |
| Payment | 1 | 4,479.39 | 1,887.24 | 2,592.15 | 203,476.03 |
| Payment | 2 | 4,479.39 | 1,863.50 | 2,615.89 | 200,860.14 |
| Payment | 3 | 4,479.39 | 1,839.54 | 2,639.85 | 198,220.29 |
| Payment | 4 | 4,479.39 | 1,815.37 | 2,664.02 | 195,556.27 |
| Payment | 5 | 4,479.39 | 1,790.97 | 2,688.42 | 192,867.85 |
| Payment | 6 | 4,479.39 | 1,766.35 | 2,713.04 | 190,154.81 |
| Payment | 7 | 4,479.39 | 1,741.50 | 2,737.89 | 187,416.92 |
| Payment | 8 | 4,479.39 | 1,716.43 | 2,762.96 | 184,653.96 |
| Payment | 9 | 4,479.39 | 1,691.12 | 2,788.27 | 181,865.89 |
| Payment | 10 | 4,479.39 | 1,665.59 | 2,813.80 | 179,051.89 |
| Payment | 11 | 4,479.39 | 1,639.82 | 2,839.57 | 176,212.32 |
| Payment | 12 | 4,479.39 | 1,613.81 | 2,865.58 | 173,346.74 |
| Payment | 13 | 4,479.39 | 1,587.57 | 2,891.82 | 170,454.92 |
| Payment | 14 | 4,479.39 | 1,561.08 | 2,918.31 | 167,536.61 |
| Payment | 15 | 4,479.39 | 1,534.36 | 2,945.03 | 164,591.58 |
| Payment | 16 | 4,479.39 | 1,507.38 | 2,972.01 | 161,619.57 |
| Payment | 17 | 4,479.39 | 1,480.17 | 2,999.22 | 158,620.35 |
| Payment | 18 | 4,479.39 | 1,452.70 | 3,026.69 | 155,593.66 |
| Payment | 19 | 4,479.39 | 1,424.98 | 3,054.41 | 152,539.25 |
| Payment | 20 | 4,479.39 | 1,397.01 | 3,082.38 | 149,456.87 |
| Payment | 21 | 4,479.39 | 1,368.78 | 3,110.61 | 146,346.26 |
| Payment | 22 | 4,479.39 | 1,340.29 | 3,139.10 | 143,207.16 |
| Payment | 23 | 4,479.39 | 1,311.54 | 3,167.85 | 140,039.31 |
| Payment | 24 | 4,479.39 | 1,282.53 | 3,196.86 | 136,842.45 |
| Payment | 25 | 4,479.39 | 1,253.25 | 3,226.14 | 133,616.31 |
| Payment | 26 | 4,479.39 | 1,223.70 | 3,255.69 | 130,360.62 |
| Payment | 27 | 4,479.39 | 1,193.89 | 3,285.50 | 127,075.12 |
| Payment | 28 | 4,479.39 | 1,163.80 | 3,315.59 | 123,759.53 |
| Payment | 29 | 4,479.39 | 1,133.43 | 3,345.96 | 120,413.57 |
| Payment | 30 | 4,479.39 | 1,102.79 | 3,376.60 | 117,036.97 |
| Payment | 31 | 4,479.39 | 1,071.86 | 3,407.53 | 113,629.44 |
| Payment | 32 | 4,479.39 | 1,040.66 | 3,438.73 | 110,190.71 |
| Payment | 33 | 4,479.39 | 1,009.16 | 3,470.23 | 106,720.48 |
| Payment | 34 | 4,479.39 | 977.38 | 3,502.01 | 103,218.47 |
| Payment | 35 | 4,479.39 | 945.31 | 3,534.08 | 99,684.39 |
| Payment | 36 | 4,479.39 | 912.94 | 3,566.45 | 96,117.94 |
| Payment | 37 | 4,479.39 | 880.28 | 3,599.11 | 92,518.83 |
| Payment | 38 | 4,479.39 | 847.32 | 3,632.07 | 88,886.76 |
| Payment | 39 | 4,479.39 | 814.05 | 3,665.34 | 85,221.42 |

1                                        C & B Foster-Guzzler.xls:9/14/00:4:14 PM

**Schedule A**

Lessee:  C & B Foster, Inc.
Equip:   Guzzler ACE 27"                          Lease No:   0448-901
         VIN#1HTGLATT81H639699
Number and frequency of payments:

┌──────────────────────────────────────────────┐
│ 60 Monthly payments in arrears                 │
│ Interest computed at 10.89 % per annum         │
└──────────────────────────────────────────────┘

| | | Payment Amount | Payment applied to Interest | Principal | Purchase price (remaining balance) |
|---|---|---|---|---|---|
| Payment | 40 | 4,479.39 | 780.49 | 3,698.90 | 81,622.52 |
| Payment | 41 | 4,479.39 | 746.61 | 3,732.78 | 77,789.74 |
| Payment | 42 | 4,479.39 | 712.42 | 3,766.97 | 74,022.77 |
| Payment | 43 | 4,479.39 | 677.93 | 3,801.46 | 70,221.31 |
| Payment | 44 | 4,479.39 | 643.11 | 3,836.28 | 66,385.03 |
| Payment | 45 | 4,479.39 | 607.98 | 3,871.41 | 62,513.62 |
| Payment | 46 | 4,479.39 | 572.52 | 3,906.87 | 58,606.75 |
| Payment | 47 | 4,479.39 | 536.74 | 3,942.65 | 54,664.10 |
| Payment | 48 | 4,479.39 | 500.63 | 3,978.76 | 50,685.34 |
| Payment | 49 | 4,479.39 | 464.19 | 4,015.20 | 46,670.14 |
| Payment | 50 | 4,479.39 | 427.42 | 4,051.97 | 42,618.17 |
| Payment | 51 | 4,479.39 | 390.31 | 4,089.08 | 38,529.09 |
| Payment | 52 | 4,479.39 | 352.86 | 4,126.53 | 34,402.56 |
| Payment | 53 | 4,479.39 | 315.07 | 4,164.32 | 30,238.24 |
| Payment | 54 | 4,479.39 | 276.93 | 4,202.46 | 26,035.78 |
| Payment | 55 | 4,479.39 | 238.44 | 4,240.95 | 21,794.83 |
| Payment | 56 | 4,479.39 | 199.60 | 4,279.79 | 17,515.04 |
| Payment | 57 | 4,479.39 | 160.41 | 4,318.98 | 13,196.06 |
| Payment | 58 | 4,479.39 | 120.85 | 4,358.54 | 8,837.52 |
| Payment | 59 | 4,479.39 | 80.94 | 4,398.45 | 4,439.07 |
| Payment | 60 | 4,479.39 | 40.32 | 4,439.07 | 0.00 |

|  | Totals | 268,763.40 | 62,695.22 | 206,088.18 | |

Balances not paid when due shall be subject to past due interest at the rate of 18% per year or the highest rate permitted by law, whichever is less.

Interest accrues daily, at the rate indicated above, on the outstanding principal balance (listed in "Purchase price" column).

Guzzler Manufacturing, Inc.                    C & B Foster, Inc.
Lender                                         Borrower

By: _____                 By: _____

Title: _____              Title: _____

2

Schedule B

## EQUIPMENT DESCRIPTION

Guzzler ACE 27"VIN#1HTGLATT81H639699

09/14/00 4:25 PM

# EXHIBIT  B

01/27/00 Case 1:08-cv-00374045 Document 1 cb Enter 01/16/2008    Page 36 of 40    ☐10
01/10 '00 16:57    ID:LANIERFAX4500    FAX:    PAGE    6

JAN-26-2000  15:41    FSC    1 630 954 2041  P.09

Lease No. 0448-900

## SCHEDULE C

Lender:    Jetstream of Houston, Inc.
1415 W. 22nd Street, Suite 1100
Oak Brook, IL 60523

Borrower:    C & B Foster, Inc.
3635 Mike Padgett Highway
Augusta, GA 30906
Contact:    Bruce Foster
Phone:    706-798-8914

| QUANTITY | EQUIPMENT DESCRIPTION (Include Make, Model, Serial No. and all Attachments) |
|---|---|
| 1 | Jetstream S/N 99448 Series 3500 |

| Lease Term | Total Financed Amount | Rent Due (Period) | No. /Amount of Rental Payments |
|---|---|---|---|
| 60 Months | $54,609.70 | Monthly in Arrears | (see payment schedule attached hereto and made a part hereof ("Schedule A") |

## ACCEPTANCE CERTIFICATE

The undersigned, as Borrower under the Installment Note dated January 6, 2000, acknowledges receipt in good condition of all the Equipment above described as of the date set forth below (the "Commencement Date").

Borrower unconditionally accepts the Equipment for all purposes of the Agreement as of the Commencement Date and agrees that it will commence payments in accordance with the Agreement.

01/03/00
Commencement Date

C & B Foster, Inc.
(Borrower)

By: _____

Title: _____

PLEASE RETAIN THIS PAGE, IF NECESSARY, FOR EXECUTION UPON ACCEPTANCE OF THE EQUIPMENT AND THEN
RETURN SAME TO LENDER.

TOTAL P.09

# EXHIBIT  C

09/18/0 Case 1:08-cv-00374-JHE Document 1 cb File0d 01/16/2008    Page 38 of 40    010
SEP-14-2000  16:26          6309542041                                         P.09

Lease No. 0448-901

## SCHEDULE C

Lender:    Guzzler Manufacturing, Inc.
           1415 W. 22nd Street, Suite 1100
           Oak Brook, IL  60523

Borrower:  C & B Foster, Inc.
           3535 Mike Padgett Highway
           Augusta, GA  30906
Contact:   Bruce Foster
Phone:     706-798-6914

| QUANTITY | EQUIPMENT DESCRIPTION (include Make, Model, Serial No. and all Attachments) |
|----------|----------------------------------------------------------------------------|
| 1        | Guzzler ACE 27"VIN#1HTGLATT81H639699                                       |

| Lease Term | Total Financed Amount | Rent Due (Period) | No./Amount of Rental Payments |
|------------|----------------------|-------------------|-------------------------------|
| 60 Months  | $208,088.18          | Monthly in Arrears | See payment schedule attached hereto and made a part hereof ("Schedule A") |

## ACCEPTANCE CERTIFICATE

The undersigned, as Borrower under the Installment Note dated September 14, 2000, acknowledges receipt in good condition of all the Equipment above described as of the date set forth below (the "Commencement Date").

Borrower unconditionally accepts the Equipment for all purposes of the Agreement as of the Commencement Date and agrees that it will commence payments in accordance with the Agreement.

9 | 15 | 00
_____
Commencement Date

C & B Foster, Inc.
(Borrower)

By: _____

Title: _____

**PLEASE RETAIN THIS PAGE, IF NECESSARY, FOR EXECUTION UPON ACCEPTANCE OF THE EQUIPMENT AND THEN RETURN SAME TO LENDER.**

TOTAL P.09

# EXHIBIT  D

Lease No. 0448-902

## SCHEDULE C

Lender:    Jetstream of Houston, Inc.
1415 W. 22nd Street, Suite 1100
Oak Brook, IL 60523

Borrower:    C & B Foster, Inc.
3535 Mike Padgett Highway
Augusta, GA 30906
Contact:    Bruce Foster
Phone:    706-798-6914

| QUANTITY | EQUIPMENT DESCRIPTION (include Make, Model, Serial No. and all Attachments) |
|---|---|
| 1 | Jetstream PSI 4220 (Serial No. 00496) Waterblaster |
| 1 | Jetstream PSI 4240 (Serial No. 00497) Waterblaster |

| Lease Term | Total Financed Amount | Rent Due (Period) | No./Amount of Rental Payments |
|---|---|---|---|
| 60 Months | $179,560.00 | Monthly in Arrears | See payment schedule attached hereto and made a part hereof ("Schedule A") |

## ACCEPTANCE CERTIFICATE

The undersigned, as Borrower under the Installment Note dated October 9, 2000, acknowledges receipt in good condition of all the Equipment above described as of the date set forth below (the "Commencement Date").

Borrower unconditionally accepts the Equipment for all purposes of the Agreement as of the Commencement Date and agrees that it will commence payments in accordance with the Agreement.

_12-15-00_
Commencement Date

C & B Foster, Inc.
(Borrower)

By: _Bruce Foster_

Title: _President_

**PLEASE RETAIN THIS PAGE, IF NECESSARY, FOR EXECUTION UPON ACCEPTANCE OF THE EQUIPMENT AND THEN RETURN SAME TO LENDER.**